UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD R. LEWIS, | Case No.: 20cv1042-MMA (MSB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION TO DENY RESPONDENTS' MOTION TO DISMISS WITHOUT PREJUDICE [ECF NO. 23]** |
| UNKNOWN, | |
| Respondent. | |

This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On June 25, 2020, the Court filed Petitioner Donald R. Lewis' Petition for Writ of Habeas Corpus ("Federal Petition") pursuant to 28 U.S.C. § 2254 against Mr. Pickett and Xavier Becerra.  (ECF No. 3.)  Petitioner is a pro se state prisoner, collaterally attacking his first-degree murder conviction.  (Id.)  Petitioner amended his Petition (hereinafter "Amended Petition") on October 26, 2020, removing two claims that had not been exhausted.  (ECF No. 17 at 1-15.)

On January 6, 2021, Respondents filed the instant Motion to Dismiss, arguing that the Amended Petition was filed after the applicable one-year statute of limitations and

1

is therefore untimely.  (ECF No. 23.)  On February 16, 2021, Petitioner filed his Opposition, arguing that his untimely filing should be excused because he is entitled to equitable tolling due to his severe mental impairment.  (ECF No. 24; see also ECF No. 17.[1])  Respondents filed their Reply on March 4, 2021.  (ECF No. 26.)  For the reasons set forth below, the Court **RECOMMENDS** that Respondent's Motion to Dismiss be **DENIED without prejudice**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The facts of Petitioner's underlying offense are not material to the Court's evaluation of Respondent's Motion to Dismiss based on timeliness, and as such are not recounted here.  A comprehensive summary of these facts is contained in the California Court of Appeal's opinion affirming in part and remanding in part Petitioner's underlying criminal conviction.  (ECF No. 12-7 at 3-7.)  The Court first notes the procedural history of Petitioner's criminal conviction and subsequent appeals before recounting the habeas petitions relevant to the instant Motion to Dismiss.

### A.      Petitioner's Criminal Conviction and Appeals

On October 19, 2016, a San Diego County Superior Court jury convicted Petitioner of first-degree murder and found true an alleged gun use enhancement.  (ECF No. 12-1 at 1.)  On November 17, 2016, the trial judge sentenced Petitioner to life without the possibility of parole, plus twenty-five years to life.  (Id.)

With the assistance of counsel, Petitioner appealed his sentence to the California Court of Appeal, raising two claims: (1) instructional error related to the jury instruction that precluded "the jury from considering voluntary intoxication in deciding the issues of express malice and imperfect self-defense," (ECF No. 12-2 at 14), and (2) "remand so that the trial court may exercise its discretion [on] whether to strike the firearm enhancement" in accordance with the newly retroactive California Penal Code Section

---

[1] ECF No. 17 is identical in every respect to ECF No. 24, except the latter does not include Petitioner's Amended Petition removing his unexhausted claims.  However, because ECF No. 17 is of a better print quality, the Court will reference this document when referring to Petitioner's Opposition.

12022.53, (ECF No. 12-5 at 2).  On March 16, 2018, the California Court of Appeal rejected the instructional error claim and remanded the matter to the superior court to consider whether Petitioner's firearm enhancement should be stricken under amended Section 12022.53.  (ECF No. 12-7 at 21.)  Petitioner then filed a petition for review with the California Supreme Court regarding the instructional error claim.  (ECF No. 12-8.)  The California Supreme Court denied the petition without comment on June 13, 2018.  (ECF No. 12-9 at 1.)  Pursuant to the appellate court's order for remand, the trial judge resentenced Petitioner on July 25, 2018, electing under California Penal Code Section 1385 to uphold the imposition of the firearm enhancement.  (ECF No. 12-10 at 1-2.)  Petitioner did not appeal the July 25, 2018 sentence and judgment.

**B.    Petitioner's State Habeas Petitions**

Following his resentencing and acting in pro se, Petitioner filed a series of habeas corpus petitions.  On May 7, 2019, Petitioner filed a petition for writ of habeas corpus in San Diego County Superior Court ("First State Petition"), arguing ineffective assistance of counsel and the instructional error claim he raised on direct appeal.  (ECF No. 12-11.)  The superior court denied the First State Petition on August 9, 2019.  (ECF No. 12-12.)

On August 23, 2019, Petitioner filed a second habeas petition in the California Court of Appeal ("Second State Petition"), raising the same two claims from his First State Petition.  (ECF No. 12-13.)  The state appellate court denied Petitioner's Second State Petition on September 10, 2019.  (ECF No. 12-14 at 1-2.)

Petitioner did not file a habeas petition in the California Supreme Court.

**C.    Federal Habeas Petition**

On May 28, 2020,[2] Petitioner filed his Federal Petition with this Court.  (ECF No. 3 at 23-24.)  On November 3, 2020, Petitioner filed his Amended Petition removing two

---

[2] This date applies the mailbox rule, under which a pro se prisoner's filing of a state or federal habeas petition is deemed filed when the prisoner delivers it to prison authorities for forwarding to the clerk of the court.  See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).  Here, Petitioner signed the Federal Petition May 28, 2020, (ECF No. 3 at 23-24), and it was filed with this Court on June 25, 2020, (id. at 1).  Therefore, for the purposes of the instant Motion, the Court will assume Petitioner

1  unexhausted claims.  (ECF No. 17 at 1-15.)  Petitioner's only remaining claim is that the

2  trial court erred in instructing the jury that it could not consider evidence of voluntary

3  intoxication in connection with express malice or imperfect self-defense.  (ECF No. 17 at

4  2.)  On January 6, 2021, Respondents filed the instant Motion to Dismiss.  (ECF No. 23.)

5  On February 16, 2021, Petitioner filed his Opposition.  (ECF No. 24.)  On March 4, 2021,

6  Respondents filed their Reply.  (ECF No. 26.)

7                                      **II.      DISCUSSION**

8           Respondents move to dismiss Petitioner's Amended Petition, claiming it is time-

9  barred pursuant to the one-year statute of limitation set forth in the Antiterrorism and

10  Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d).  (ECF No.

11  23-1 at 7.)  Respondents argue the Petition is time-barred because (1) statutory tolling

12  does not render the Petition timely and (2) Petitioner is not entitled to equitable tolling.

13  (ECF No. 23-1 at 8-10.)  In his Opposition, Petitioner argues he should be entitled to

14  equitable tolling because of his severe mental impairments and because he has been

15  pursuing his rights diligently.  (See ECF No. 17 at 20-21, 22-24.)  In the Reply,

16  Respondents claim that Petitioner has not met his burden of showing extraordinary

17  circumstances that entitle him to equitable tolling, and regardless of whether the

18  Petition is timely, the Court should deny it on the merits.  (ECF No. 26 at 6-9.)

19           For the reasons discussed in this Report and Recommendation, this Court

20  **RECOMMENDS DENYING** Respondents' Motion to Dismiss **without prejudice**.

21  **A.      Statutory Tolling Period Under AEDPA**

22           Unless an exception applies, Petitioner is barred by AEDPA's statute of limitations.

23  AEDPA imposes a one-year statute of limitation on all federal habeas petitions filed by

27  _____

28  delivered his Federal Petition for mailing on May 28, 2020.  (See also ECF No. 23-1 at 6 n.1
(Respondents' Motion to Dismiss using the same date).)

persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).

The limitation period begins to run from the latest of:

> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Subsections (B), (C), and (D) of 28 U.S.C. § 2244(d)(1) are not argued and do not apply in this case.  Therefore, the Court analyzes the timeliness of the Petition under subsection (A).

To determine whether a petition is timely under subsection (A), the Court must first determine when the judgment became final by the conclusion of direct review.  28 U.S.C. § 2244(d)(A).  In cases where the appellate court "either partially or wholly reverse[s] a defendant's conviction or sentence, or both, and expressly remand[s]" the case to the trial court, "the judgment does not become final, and the statute of limitations does not begin to run, until the [trial court] has entered an amended judgment and the time for appealing that judgment has passed."  United States v. Colvin, 204 F.3d 1221, 1225 (9th Cir. 2000).  If the defendant does not file an appeal, the judgment becomes final sixty days after conviction.  Cal. R. Ct. 8.308(a).

### 1.    Beginning of Limitations Period

On July 25, 2018, the trial court resentenced Petitioner after remand, and Petitioner did not appeal.  Thus, Petitioner's conviction became final on September 23, 2018 – sixty days after he was resentenced – for purposes of AEDPA.  Accordingly, the statute of limitations for the filing of Petitioner's habeas petition in federal court began to run on September 24, 2018, the day after the judgment became final.  See 28 U.S.C. § 2241(d)(1)(A); see also Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (citing

1    Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001)) (noting that the one-year

2    statute of limitation under AEDPA begins to run the day after the conviction becomes

3    final), superseded by statute on other grounds.  Petitioner had 365 days from this point,

4    or until September 24, 2019, to file a habeas petition in federal court.

5              **2.      Amended Petition Filing Date**

6              Respondents argue that the filing date the Court should use for the timeliness

7    analysis is October 26, 2020, when Petitioner filed his Amended Petition, instead of May

8    28, 2020, when Petitioner filed the Federal Petition.  (ECF No. 23-1 at 8.)  Respondents

9    cite to Duncan v. Walker, 533 U.S. 167 (2001), in support of this argument, but do not

10   articulate how this case supports their position.  (ECF No. 23-1 at 8.)  The Court in

11   Duncan simply held that a federal habeas corpus petition is not considered an

12   "application for State post-conviction or other collateral review" within the meaning of

13   28 U.S.C. § 2244(d)(2), so it does not toll the limitations period.  Id. at 182.  Duncan does

14   not apply in this case because the Federal Petition was filed after the end of the one-

15   year AEDPA statute of limitations and the question is not whether it tolls the limitations

16   period.  Instead, the question is whether the Amended Petition relates back to the filing

17   date of the Federal Petition.

18             A habeas petition "may be amended or supplemented as provided in the rules of

19   procedure applicable to civil actions."  28 U.S.C. § 2242.  Federal Rule of Civil procedure

20   15(a) permits a party to amend its pleading in certain circumstances.  Fed. R. Civ. P.

21   15(a); see also Calderon v. U.S. Dist. Court for N. Dist. of Ca., 134 F.3d 981, 986 n.6 (9th

22   Cir. 1998) ("Rule 15(a) applies to habeas corpus actions with the same force that it

23   applies to garden-variety civil cases.").  Such an amendment "relates back to the date of

24   the original pleading when . . . the amendment asserts a claim or defense that arose out

25   of the conduct, transaction, or occurrence set out—or attempted to be set out in the

26   original pleading."  Fed. R. Civ. P 15(c)(1).  Here, the Amended Petition asserts a single

27   claim that was present in the Federal Petition, with the difference between the two

28   petitions being Petitioner's removal of two unexhausted claims.  (Compare ECF No. 3

with ECF No. 17 at 13 (describing singular remaining issue as "whether CalCrim No. 625 improperly prohibits jury from considering voluntary intoxication in support of imperfect self-defense [or express malice]"); see also ECF No. 11-1 at 3 (Respondents' Motion to Dismiss the Federal Petition, explaining the Federal Petition raised three claims, one of which was "his claim of instructional error related to CALCRIM No. 625"), ECF No. 17 at 16 (Petitioner explaining "all unexhausted claims have been removed from the amended habeas corpus petition).)  Because the claim is the same, the Amended Petition relates back to the filing date of the Federal Petition, and the Court will consider May 28, 2020 the filing date for purposes of timeliness analysis.  See United States v. Santarelli, 929 F.3d 95, 102 (3d Cir. 2019) (finding claim in amended habeas petition related back to initial habeas petition where the petitioner merely sought to "clarify the cause of her counsels' alleged ineffectiveness with respect to their failure to argue that the District Court erred finding that she was eligible for the number-of-victims enhancement").

**B.     Statutory Tolling Does Not Render the Petition Timely.**

Petitioner is entitled to statutory tolling, but it is insufficient to make the filing of the Amended Petition timely.  AEDPA specifically authorizes tolling of the limitations period when a properly filed application for post-conviction relief is pending in state court.  28 U.S.C. § 2244(d)(2).  Having filed two state habeas petitions, Petitioner is entitled to statutory tolling for the entire period during which his state petitions were pending.  See Carey v. Saffold, 536 U.S. 214, 223 (2002) (finding "intervals between a lower court decision and a filing of a new petition in a higher court within the scope of the statutory word 'pending'"); (see also ECF No. 23-1 at 9 (Defendants explaining "Lewis is entitled to statutory tolling for the entire period during which his state habeas petitions were pending, from May 7, 2019, to September 10, 2019.").)  Petitioner filed his First State Petition on May 7, 2019.  (ECF No. 12-11.)  The state appellate court denied Petitioner's Second State Petition on September 10, 2019.  (ECF 12-14 at 1-2.)  Thus, the time between May 7, 2019 and September 10, 2019 – a total of 126 days – is

tolled from the one-year limitations period, extending the timely filing deadline from September 24, 2019 to January 27, 2020. However, Petitioner did not file his Federal Petition until May 28, 2020, 122 days (slightly over four months) after the January 27, 2020 deadline expired. Accordingly, unless Petitioner is entitled to equitable tolling, the Petition is untimely.

**C.   Further Development of the Record is Required to Determine if Petitioner is Entitled to Equitable Tolling.**

AEDPA's one-year statute of limitation may be subject to equitable tolling in appropriate cases. Holland v. Florida, 560 U.S. 631, 645 (2010). To qualify for equitable tolling, the petitioner must show: (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "[T]he threshold necessary to trigger equitable tolling (under AEDPA) is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). The failure to file a timely petition must be the result of extraordinary external forces, not the result of the petitioner's lack of diligence. Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

When a petitioner asserts that a mental impairment was the cause of an untimely filing, equitable tolling is permitted if the following two factors are met: (1) the impairment was either so severe that the petitioner was unable to understand the need to timely file or his mental state rendered him unable to prepare his habeas petition and effectuate its filing, and (2) the impairment must have made it impossible to meet the filing deadline under the totality of the circumstances despite the petitioner's diligence. Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010).

While the burden to qualify for equitable tolling is high, the courts are directed to be more lenient when interpreting the pleadings of pro se litigants like Petitioner. See Haines v. Kerner, 404 U.S. 519 U.S. 519, 520 (1972) (noting that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by

lawyers"); see also Small v. Horel, 367 F. App'x 759, 761 (9th Cir. 2010) (construing state habeas claim liberally to find the petitioner satisfied the exhaustion requirement); Haughton v. Sherman, No. EDCV16251DOCGJS, 2016 WL 7167905, at *7 (C.D. Cal. Oct. 19, 2016), report and recommendation adopted by 2016 WL 7167924 (C.D. Cal. Dec. 7, 2016) (reviewing entire record for evidence to support the petitioner's assertion of his mental impairment, notwithstanding the fact that petitioner had not provided any such information or evidence).  Additionally, district courts should not require the petitioner to "carry a burden of persuasion" at the time he asserts equitable tolling to merit further investigation into the merits of his arguments for tolling.  Laws v. Lamarque 351 F.3d 919, 924 (9th Cir. 2003).  The Court is required to ensure the record is sufficiently developed when a petitioner "makes 'a good faith allegation that would, if true, entitle him to equitable tolling.'"  Roy v. Lampert, 465 F.3d 964, 969 (9th Cir. 2006) (quoting Laws, 351 F.3d at 919) (emphasis added in Roy).

Petitioner argues he struggles with a range of cognitive issues (perseverative responses, impaired problem-solving, and intellectual deficiencies), which together qualify as an extraordinary circumstance that prevented him from filing his Petition on time.  (Id. at 20-21.)  Petitioner's primary evidence relating to his mental impairment is the trial testimony of Dr. Cynthia Boyd, a neuropsychologist who conducted a neuropsychological evaluation of Petitioner in April 2016, before his criminal trial.  (See ECF No. 17 at 26-73).  According to Dr. Boyd, Petitioner suffers from limited cognitive functioning which was likely caused by a brain injury at two-years old.  (Id. at 72.)

Petitioner also filed the declarations of two inmates – Kenneth Washington and Darius Butler – who assisted him with his habeas petitions.  (See ECF No. 17 at 75, 77.) Mr. Washington began assisting Petitioner when they met in September 2018 and helped him file his two state habeas petitions as well as his Federal Petition.  (Id. at 75.) In September 2020, Mr. Butler began helping Petitioner and assisted with his Amended Petition.  (Id. at 77.)  According to Mr. Butler, Petitioner's pro se collateral attacks were

all flawed due to his intellectual deficiency and the misinformation he was receiving from Mr. Washington.  (Id.)  Mr. Butler also says that based on Petitioner's "intellectual hindrances," he does not "believe that Petitioner would have been able to complete his habeas corpus" without Mr. Butler's assistance.  (Id.)

In the Reply, Respondents argue that Petitioner is unable to demonstrate that his decades-old injury, "from which he apparently healed without incident," constitutes an extraordinary circumstance excusing the untimely filing of his petition.  (ECF No. 26 at 8.)  Respondents claim that what Petitioner is really arguing is his "lack of legal sophistication" and that Petitioner's "failure to efficiently litigate his habeas claims in the state courts was not the result of some serious brain injury incurred decades earlier, but actually because of his lack of legal sophistication."  (Id.)  Respondents rely on portions of Dr. Boyd's testimony during her cross-examination to rebut Petitioner's showing of his mental impairment.  The Court reviews the parties' evidence and arguments using the Bills test.

### 1. **Bills Prong One**

The first prong of the test set forth in Bills v. Clark requires a showing that Petitioner's mental impairment either:  (1) was so severe Petitioner was unable to understand the need to timely file, or (2) rendered him unable to prepare his habeas petition and effectuate its filing on his own.  628 F.3d at 1099-1100.  For the period at issue, September 24, 2018 to May 7, 2019 and September 10, 2019 to January 27, 2020, further factual development is required before this Court can determine whether Petitioner's alleged mental impairment warrants equitable tolling.  "In assessing an equitable tolling claim based on mental impairment, the Court must take care not to deny a request for equitable tolling before a sufficient record can be developed."  Housh v. Rackley, Case No. 17-cv-04222-HSG (PR), 2018 WL 3537178, 3-4 (N.D. Cal. July 23, 2018).  In the Ninth Circuit, a district court may only dismiss a claim in the presence of a sufficiently developed record containing "countervailing evidence" that rebuts a petitioner's claim.  Laws, 351 F.3d at 924; see also Chick v. Chavez, 518 Fed. App'x 567,

569 (9th Cir. 2013) (finding petitioner was entitled to further expansion of factual record because he had sufficiently pled a mental impairment for equitable tolling and respondent had not offered sufficient countervailing evidence from the tolling period to rebut petitioner's claim).

Though Petitioner identified three types of dysfunction from Dr. Boyd's testimony as relevant to his equitable tolling claim, the Court finds no merit in his arguments regarding "perservative[sic] responses" and "impaired problem-solving."  Petitioner argued that those impairments explain "why when the Superior Court denied the habeas corpus, Petitioner then proceeded – with the help of Washington—to file a habeas corpus in the Court of Appeals with the exact same information."  (ECF No. 17 at 20-21.)  However, the limitations period was tolled from the filing date of the First State Habeas through the denial of his Second State Habeas, (see discussion supra at Section II.B.), so the first two mental impairments had no effect on the timeliness of the Amended Petition.

However, as to his third alleged mental impairment, intellectual deficiency, Petitioner has made "a non-frivolous showing he had a severe mental impairment during the filing period," that cannot be overcome without countervailing evidence.  See Bills, 628 F.3d at 1100.  Dr. Boyd's testing of Petitioner found him in the borderline range on his overall IQ, with an intellectually deficient verbal IQ of 64 and a low-average processing speed.  (ECF No. 17 at 55, 53.)  On a test measuring his baseline functioning in academic achievement, Petitioner scored in less than the first percentile in reading and in the first percentile in sentence comprehension.  (Id. at 50, 51.)  Petitioner also scored very poorly on tests measuring his memory,[3] multitasking,[4] and problem-

---

[3] Petitioner scored in the first percentile – intellectually deficient range – on the Working Memory Index, which involves tasks that require mental manipulation.  (ECF No. 17. at 55-56.)  When tested on his verbal memory, his immediate recall was in the first and fifth percentiles and his long-term recall (i.e., his ability to recall what he had heard and repeat it back after 30 minutes) was in the ninth percentile – i.e., the low average range.  (Id. at 60; see also ECF No. 27-1 at 104.)

[4] On the Trail Making Test, which indicates multitasking ability and also tests for attention, Petitioner scored in the second percentile.  (ECF No. 17 at 57.)

1   solving.[5]  (Id. at 55-56, 60, 57, 67.)   These assessments are supported by Mr. Butler's

2   declaration that he does not believe Petitioner could have filed his habeas petition on

3   his own because of "intellectual hindrances."  (Id. at 77.)

4        It is helpful to compare Petitioner's showing to evidence in similar cases, where

5   courts determined the petitioners were entitled to equitable tolling.  In Simon v. Uribe,

6   the Ninth Circuit reversed and remanded the district court's decision to dismiss a habeas

7   petition on timeliness where it found that the petitioner was entitled to further factual

8   development "because he made a 'non-frivolous showing that he had a severe mental

9   impairment during the filing period.'"  528 F. App'x 764, 765 (9th Cir. 2013) (quoting

10   Bills, 628 F.3d at 1100)  Before the district court, the pro se petitioner had opposed a

11   motion to dismiss on timeliness and submitted a preliminary neuropsychological

12   evaluation that detailed the results of various neuropsychological tests, showing

13   "extremely low" intellectual functioning and "severely impaired" executive functioning.

14   Simon v. Uribe, No. C-09-5859 TEH (PR), 2011 WL 13146735, at *3 (N.D. Cal. Mar. 9,

15   2011), rev'd and remanded, 528 F. App'x 764 (9th Cir. 2013)  The district court initially

16   observed that according to the report further review of medical records and collateral

17   information was needed to interpret the testing and that the testing was not "generated

18   close enough in time to the limitation period to be probative of his mental state during

19   that period."  Id. at *3.  After remand, the petitioner underwent further

20   neuropsychological testing which showed he had a low verbal IQ (scoring a 68), poor

21   memory, impaired multitasking, and very low reading and sentence comprehension

22   scores (scoring 60 and 55 respectively).  Simon v. Uribe, Case No. 09-cv-05859-THE,

23   2017 WL 3453327, at *8 (N.D. Cal. Aug. 11, 2017)  Based on these results, the district

---

27   [5] Petitioner scored in less than the first percentile on the Category Test, which is a problem-solving test
     that has "been known in the literature for many, many years to be a test that is quite sensitive to the
28   effects of brain damage, but not in one particular area of the brain."  (Id. at 67.)

1   court found the petitioner lacked "the cognitive capacity needed to understand the

2   concept of a timely habeas filing," and therefore satisfied prong one of <u>Bills</u>.  <u>Id.</u> at *15.

3   　　　Similarly, in <u>Williams v. Schmidt</u>, No. 3:10-CV-00025-TMB-DMS, 2011 WL 4071859

4   (D. Alaska, Sep. 13, 2011), the magistrate judge found that petitioner met the first prong

5   of <u>Bills</u> where several rounds of neuropsychological testing showed the petitioner

6   suffered from a low verbal IQ (scoring 73 on one and 70 on the other), poor working

7   memory (fourth percentile), and impaired problem solving.  <u>Id.</u> at *4-6, *9.  The court

8   concluded that the petitioner's "recall and verbal deficits would make [him] unable to

9   remember and understand what had to be done to continue his case and when."  <u>Id.</u> at

10  *9.

11  　　　When compared with the testing results identified as a basis for equitable tolling

12  by the <u>Simon</u> and <u>Williams</u> courts, Petitioner's testing results show consistent results.

13  He has therefore made a showing of cognitive deficiencies that could have prevented

14  him from either understanding the need to file timely or preparing and filing his habeas

15  petition.

16  　　　Respondents argue Petitioner is not entitled to equitable tolling because he fails

17  to show that his brain injury "constitutes an extraordinary circumstance excusing the

18  untimely filing of his petition."  (ECF No. 26 at 8.)  Respondents point to several portions

19  of Dr. Boyd's cross-examination testimony, wherein she was questioned about

20  Petitioner's other medical records, to argue that her testimony contradicted Petitioner's

21  position.  (<u>See</u> ECF No. 26 at 8 (citing ECF No. 27-1 at 77-78, 89, 126-128).)[6]  First, the

22  Court notes that "[e]xpert witnesses may rely on inadmissible hearsay in forming their

23  opinions, so long as it is of a type reasonably relied upon by experts in their field."

24  <u>United States v. Cazares</u>, 788 F.3d 956, 977 (9th Cir. 2015) (citing, inter alia, Fed. R. Evid.

25  703).  "[I]f the facts or data would otherwise be inadmissible, the proponent of the

26  opinion may disclose them to the jury only if their probative value in helping the jury

27  _____

28  [6] The Court notes that Respondent used the pagination of the Reporter's Transcript when citing to Dr. Boyd's cross examination testimony, while the Court cites to the CM/ECF pagination.

evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.

The record before this Court does not demonstrate that the medical records

acknowledged by Dr. Boyd were admissible for any other purpose than assessing Dr.

Boyd's opinion.

Second, after careful review, those portions of the testimony relied on by

Respondents do not materially discredit Dr. Boyd's testimony.  Respondents state that

Dr. Boyd testified that Petitioner "had been assessed to have an average IQ."  (ECF No.

26 at 8.)  This representation leaves out significant details relevant to the interpretation

of this testimony.  First, this "assessment," was the opinion of a doctor who interacted

with Petitioner in 2006 when he was in the hospital for a total of 5 hours during an

involuntary hold.  (Id. at 87.)  Because the testimony is in the form of cross examination

of Dr. Boyd, it is not clear how much time the unnamed doctor interacted with

Petitioner or what assessment tools, if any, were used.  Instead, it states only that the

doctor formed an opinion simply "based on his[] interactions with" Petitioner.  (Id. at

89.)  Dr. Boyd's acknowledgment that an earlier doctor evaluating whether Petitioner

could be retained on an involuntary hold though he appeared to have an average IQ

does not undermine the results of Dr. Boyd's neuropsychological testing, particularly

where the specific basis for the unnamed doctor's opinion is unknown.  Respondents

also argue that Dr. Boyd acknowledged "that on a number of assessments [Petitioner's]

scores were in the average or low average range."  (ECF No. 26 at 8.)  Reviewing this

testimony, it is not inconsistent with the testimony described above.  (See ECF No. 27-1

at 102-03.)

Respondents finally rely on portions of Dr. Boyd's testimony that appear to

address Petitioner's recovery after his brain injury, but these also fail to undermine Dr.

Boyd's conclusions.  First, Dr. Boyd acknowledged that Petitioner's mother had

described him to an investigator as a good student in school, whose temperament

changed as a teenager.  (ECF No. 26 at 8.)  It appears from the transcript that the

statement acknowledged by Dr. Boyd was made by Petitioner's mother to his trial

1   investigator, and indicated that he "was a good student but he didn't like it when people

2   bullied him," and "he was a good kid until he reached his teen years[, when his temper

3   changed]." (ECF No. 938-39.) However, absent from this discussion is any explanation

4   of the context of the statement made to investigator, or why Dr. Boyd discredited it. Dr.

5   Boyd also acknowledged that medical records from follow-up visits after Petitioner's

6   childhood head injury indicated he appeared to be recovering well. (ECF No. 26 at 8.)

7   While Dr. Boyd acknowledged that neurological exams following the head injury did not

8   note any issues, she also explained that neurologists look at gross functioning rather

9   than sensitive functioning, that there are no neuropsychological tests appropriate for

10  two-year-olds, and that "it can take a long time for [cognitive functioning] deficits to be

11  known." (ECF No. 27-1 at 126-29.) In addition to not clearly discrediting Dr. Boyd's

12  testimony, it is not clear that testimony which might bear on causation would be

13  relevant to Petitioner's cognitive functioning during the limitations period.

14          Respondents also argue "what [Petitioner] really argues is his lack of legal

15  sophistication," which is not a basis for equitable tolling. (ECF No. 26 at 3.)

16  Respondents are correct that "a pro se petitioner's lack of legal sophistication is not, by

17  itself, an extraordinary circumstance warranting equitable tolling. Rasberry v. Garcia,

18  448 F.3d 1150, 1154 (9th Cir. 2006). However, Petitioner does not argue lack of legal

19  sophistication by itself. Keeping in mind the liberal construction afforded pro se

20  petitioners, Petitioner does not argue his lack of legal sophistication in a vacuum. He

21  also argues his intellectual deficiencies. One would expect that any person who suffers

22  from intellectual disability severe enough to warrant equitable tolling would also lack

23  legal sophistication as a result. The record is insufficient to determine whether

24  Petitioner's lack of legal sophistication is related to or resulting from his claimed

25  intellectual deficiencies, and therefore the Court finds that the issues of mental

26  impairment and legal knowledge are intertwined in this case, and the record is

27

28

1  insufficient to determine that Petitioner's delayed filing in this case was attributable to
2  one, but not the other.

3          To dismiss the Petition on timeliness without further factual development, there
4  must be sufficient evidence in the record to allow the Court to resolve the question of
5  Petitioner's competency during the limitations period.  See Biagas v. Walker, C 10-2429,
6  2012 WL 1094433, at *7 (N.D. Cal. Mar. 29, 2012) (denying motion to dismiss habeas
7  petition as time-barred because record was "not sufficiently developed for
8  consideration because it lack[ed] Petitioner's complete medical reports relating to his
9  mental impairment from the start of the limitations period . . . through the filing date of
10  his federal petition . . .")  The record before the Court, which consists of Dr. Boyd's trial
11  testimony and cross examination and the declarations of two jailhouse lawyers, does
12  not permit the Court to resolve the issue of Petitioner's competency during the
13  limitations period.  Cf. Roberts v. Marshall, 627 F.3d 768, 772-73 (9th Cir. 2010)
14  (embracing district court's decision to resolve issue of inmate's competency where the
15  record was amply developed and included numerous mental health evaluations,
16  treatment plans, and progress reports) and Stofle v. Clay, No. C 09-02847 SBA, 2011 WL
17  1302194, at *4 (N.D. Cal. Mar. 31, 2011) (finding petitioner did not meet first prong of
18  Bills where record showed he filed grievances, read transcripts, wrote poetry, spoke
19  with a psychiatrist about his case, completed anger management worksheets, discussed
20  books, visited with family, and requested a change in his therapy schedule).  Therefore,
21  expansion of the factual record as to the first prong of Bills is required.

22          **2.  Bills Prong Two**

23          Under the second equitable tolling prong, Petitioner must prove that his mental
24  impairment "made it impossible under the totality of the circumstances to meet the
25  filing deadline despite [his] diligence."  Bills, 628 F.3d at 1093.  Bills, however, does not
26  require a literal impossibility.  Id. at 1100 (stating that the second prong requires a
27  showing that the mental impairment was "a but-for cause of any delay"); see also Sossa
28  v. Diaz, 729 F.3d 1225, 1236 (9th Cir.2013) (explaining that Bills' "impossibility

1  requirement should not be strictly imposed because imposing extraordinarily high

2  evidentiary standards on pro se prisoner litigants ... runs against the grain of [Ninth

3  Circuit] precedent") (internal quotation marks omitted).  "With respect to the necessary

4  diligence, the petitioner must diligently seek assistance and exploit whatever assistance

5  is reasonably available."  <u>Bills</u>, 628 F.3d at 1101.  A petitioner's mental impairment

6  "might justify equitable tolling if it interferes with the ability to understand the need for

7  assistance, the ability to secure it, or the ability to cooperate with or monitor assistance

8  the petitioner does secure."  <u>Id.</u> at 1100.  The Ninth Circuit has held courts may grant a

9  motion to dismiss based on timeliness where there is sufficient evidence in the record to

10  determine that the petitioner fails the second <u>Bills</u> prong due to lack of diligence, even if

11  the record is not sufficiently developed as to the first prong.   <u>Stancle v. Clay</u>, 692 F.3d

12  948, 958 (9th Cir. 2012).

13         Here, the existing record does not demonstrate a lack of diligence.  The only

14  evidence in the record that bears on Petitioner's diligence are the two declarations from

15  the inmates who helped Petitioner file his habeas petitions.  However, these

16  declarations do not provide sufficient information for the Court to determine what

17  caused Petitioner's late filing of his Federal Petition.  Mr. Washington declares that he

18  has assisted Petitioner since approximately the beginning of the limitations period, by

19  advising, researching, and assisting "in filing" his state habeas petitions and his Federal

20  Petition.  (ECF No. 17 at 75.)  It is unclear what role Petitioner played in this process, and

21  the degree to which he was able to oversee or cooperate with Mr. Washington.  Mr.

22  Butler declares that he began assisting Petitioner in September of 2020 and after

23  reviewing the documents in Petitioner's case, he "recommended to Petitioner to

24  request an extension of time to amend his federal habeas corpus."  (<u>Id.</u> at 77.)  While

25  the exact contours of Mr. Butler and Petitioner's roles remain unclear, Mr. Butler shares

26  his opinion that Petitioner's "intellectual deficiency" and Mr. Washington's bad advice

27  caused Petitioner to file incorrect habeas petitions, and Petitioner's "intellectual

28  hindrances" made it impossible for Petitioner to "complete his habeas corpus without

[Mr. Butler's] assistance."  (Id.)  These declarations do not explain Petitioner's ability to understand and oversee any aspect of the filings or describe what Petitioner understood or did to facilitate the filing of his habeas petitions.  They also give no information as to how Petitioner secured assistance from these jailhouse lawyers.

To the extent Respondents argue that Petitioner "had no trouble raising his instructional error claim in his habeas petitions; he could have just as readily raised the claim at the same time in a federal petition," (see ECF No. 23-1 at 10), the Court is not persuaded that this record supports that conclusion since further factual development regarding Petitioner's abilities and efforts is required.  See Jones v. Cate, 590 F. App'x 701, 702 (9th Cir. 2015) (reversing district court's finding that the petitioner did not act diligently because he "filed multiple state habeas petitions and sought assistance from other inmates to draft correspondence , complete paperwork, and file prison grievances," and holding "the only inference which arises is that [petitioner] was incapable of asking for help in filing a federal habeas petition") (emphasis added); see also Simon, 2017 WL 3453327 at *17 ("If . . . the existence of a prior filing precluded a finding of diligence, then no prisoner with an intellectual disability could ever meet the second prong of Bills."); Torres v. Diaz, Case No.: 19-cv-01964-LAB-JLB, 2020 WL 7869488 at *9, *13 (S.D. Cal. Dec. 31, 2020), report and recommendation adopted in relevant part by 2021 WL 807689 (S.D. Cal. Mar. 3, 2021) (rejecting the respondent's argument that "his ability to file two habeas petitions and a supplemental habeas petition undercuts any claim that his mental illness was the but-for cause of his filing delay or that he was sufficiently diligent," because once he was released from the hospital and secured assistance, he "worked on his state habeas petitions 'with some regularity,' up until the filing of his federal habeas petition [fifteen months later]"); cf. Stancle, 692 F.3d at 958 (approving the lower court's dismissal, finding a lack of diligence caused the untimely filing where the petitioner had the continual assistance of another inmate and "delayed filing his first petition in superior court for seven months,

1  because he was waiting for a response to his request for assistance from the Innocence

2  Project and a response for clemency from the Governor").

3        For these reasons, considering the record before the Court, Petitioner has made a

4  non-frivolous showing that he suffers from a severe mental impairment that kept him

5  from timely filing his Federal Habeas, which Respondents have failed to rebut with

6  sufficient countervailing evidence.  Therefore, further expansion of the factual record is

7  also required as to the second prong of <u>Bills</u>.

8  **D.**    **The Court Should Not Reach the Merits Pursuant to Argument First Raised by**

9        **Respondents in Reply**

10       Respondents alternatively argue the Court can avoid resolving the issue of

11 timeliness and instead "simply resolve [Petitioner's] petition on the merits."  (ECF No. 26

12 at 3-4.)  Respondents chose to address the merits of Petitioner's claim in the Reply after

13 Petitioner's opportunity for a response has passed.  (<u>See</u> ECF No. 26 at 8-13.)  As a

14 result, Petitioner was left without the ability to respond to the arguments raised by

15 Respondents addressing the merits of Petitioner's instructional error claim.  <u>See</u> <u>Hadley</u>

16 <u>v. McDaniel</u>, No. 307-CV-00529-LRH-VPC, 2009 WL 395817, at *3, n.3 (D. Nev. Feb. 17,

17 2009) ("The Court generally does not permit a party pursuing a motion to dismiss to

18 "sandbag" an opposing party by raising a new basis for dismissal for the first time in the

19 reply.")  The Court is therefore not prepared to decide the merits of Petitioner's claim as

20 it is currently presented to the Court.

21       In urging the Court to reach the merits at this stage in the proceedings,

22 Respondents cite to Rule 4 of the Rules Governing § 2254 Cases as a basis for the Court's

23 authority to summarily dismiss the petition.  (<u>See</u> ECF No. 26 at 9.)  Rule 4 allows a

24 district court to enter an order for the summary dismissal of a habeas petition "[i]f it

25 plainly appears from the motion, any attached exhibits, and the record of prior

26 proceedings that the moving party is not entitled to relief. . ."  Fed. R. Civ. P. 4(b).

27 Summary dismissal is appropriate only in cases where the allegations in the petition are

28 vague or conclusory, palpably incredible, or patently frivolous or false.  <u>See</u> <u>Hendricks v.</u>

1   <u>Vasquez</u>, 908 F.2d 490, 491 (9th Cir. 1990).  Here, Petitioner's single claim of

2   instructional error does not meet the standard for summary dismissal, having already

3   survived this Court's screening at the outset of his filing, (<u>see</u> ECF No. 4), and because,

4   from further review, Petitioner set forth his claim with specificity and included relevant

5   citations to the state court record, (ECF No. 17 at 1-15).  Petitioner's claim, when

6   unanswered, cannot be characterized as so incredible or frivolous as to warrant

7   summary dismissal.  <u>See</u> <u>Hendricks</u>, 908 F.2d at 492.

8         The Court agrees that Petitioner's claim may be decided before deciding the

9   timeliness and equitable tolling issues.  Deciding the issue of timeliness is a fact

10  intensive inquiry which may be costly and time-consuming.  <u>See</u> <u>Simon</u>, 2017 WL

11  3453327 at *3-12 (describing the development of the record after remand).  Therefore,

12  in the interests of saving time and resources, it may make the most sense to reserve the

13  issue of whether Petitioner's petition is time-barred until after his claim has been

14  decided on the merits.  <u>See, e.g.</u>, <u>Day v. McDonough</u>, 547 U.S. 198, 205–06, 210 (2006)

15  (holding statute of limitations is not jurisdictional and federal habeas court may

16  determine whether interests of justice would be better served by dismissing petition as

17  time-barred or addressing merits) (citing <u>Granberry v. Greer</u>, 481 U.S. 129, 136 (1987));

18  <u>see also</u> <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir.2002) ("Procedural bar issues

19  are not infrequently more complex than the merits issues presented by the appeal, so it

20  may well make sense in some instances to proceed to the merits if the result will be the

21  same.") (citing, inter alia, <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997)).

22        Because the Court is not prepared to summarily dismiss the Petition and

23  Petitioner was denied an opportunity to address Respondents' arguments on the merits,

24  the best course of action would be for Respondents to file an answer in accordance with

25  Rule 5 of the Rules Governing § 2254 Cases.  Proceeding in this manner will allow the

26  Court to address the merits while Respondents preserve the issue of timeliness as an

27  affirmative defense.  <u>See</u> <u>Blanco v. Robertson</u>, Case No.: 18cv1909 CAB (AGS), 2020 WL

28

2542863 at *4 (S.D. Cal. May 19, 2020) (finding that statute of limitations defense was not waived by not addressing it in the motion to dismiss).

### III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the district court issue an order (1) **DENYING** Respondents' Motion to Dismiss without prejudice, and (2) **ORDERING** Respondents to file an answer.

**IT IS ORDERED** that no later than **June 1, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 15, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  May 17, 2021

Honorable Michael S. Berg
United States Magistrate Judge

20cv1042-MMA (MSB)