1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23

DONALD R. LEWIS,

                              Petitioner,

v.

KATHLEEN ALLISON,

                              Respondent.

Case No. 20-cv-1042-MMA (MSB)

**ORDER DENYING PETITIONER'S MOTION TO AMEND;**

[Doc. No. 45]

**ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE; AND**

[Doc. No. 41]

**DENYING PETITION FOR WRIT OF HABEAS CORPUS**

24
25
26
27
28

Petitioner Donald R. Lewis ("Petitioner"), a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state court conviction for first-degree murder.  *See* Doc. No. 1.  On October 26, 2020, Petitioner filed an amended petition.  *See* Doc. No. 17 (the "Amended Petition").  Respondent filed an answer on July 15, 2021.  *See* Doc. No. 38.  Petitioner

was provided the opportunity to file a traverse by August 16, 2021, *see* Doc. No. 30, but failed to do so.  The matter was referred to United States Magistrate Judge Michael S. Berg for preparation of a Report and Recommendation pursuant to Title 28, section 636(b)(1) and Civil Local Rule HC.2.  Judge Berg has issued a thorough and well-reasoned Report recommending that the Amended Petition be denied.  *See* Doc. No. 41 (the "R&R").

All objections to the R&R were due by no later than June 9, 2022.  *See* Doc. No. 44.  On May 11, 2022, Petitioner filed a proposed further amended petition, Doc. No. 45, as well as a filing entitled "Supplement to Motion to Alter or Amend Judgment," Doc. No. 46.  The Court treats the former as a motion for leave to amend and the latter as an objection to the R&R.

For the reasons set forth below, the Court **DENIES** Petitioner's motion for leave to file the further amended petition.  The Court further **OVERRULES** Petitioner's objection, **ADOPTS** the R&R in its entirety, and **DENIES** the Amended Petition for writ of habeas corpus.

## I. BACKGROUND

The following facts are taken from the State Court Record, *see* Doc Nos. 12, 27, 40, including the California Court of Appeal's opinion in *People v. Lewis*, Appeal No. D071434, *see* Doc. No. 12-7.  The Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992).

**A.    State Court Trial, Conviction, and Direct Appeal**

*Prosecution*

On August 19, 2015, Lewis was at an apartment complex in El Cajon where his then-girlfriend, Erica Howard, lived. Around 7:00 p.m., Lewis, Howard,

James Crawford (Lewis's friend), and at least two other men were arguing and yelling outside. Lewis was hollering. He pulled out a gun and waived it around "kind of wildly." The men told Lewis to calm down and stated they were just trying to "get wet," a reference to smoking PCP. Howard pled for Lewis to not shoot and asked him to leave. She pulled his arm, but Lewis ignored her. Lewis, while yelling, pointed his gun at Crawford's chest. No one was threatening Lewis, and Crawford did not act aggressively toward him.

Everyone except for Crawford fled from the area. Lewis lowered his gun and stared at it. Crawford walked away, toward an adjacent street, and Lewis followed him. They stopped in the complex's parking lot. Crawford backed away as Lewis pointed his gun at Crawford's chest. Crawford was unarmed and begged for his life. Lewis fired one bullet into Crawford, paused for a few seconds, and then shot him again. Neighbors who heard the shots called 911.

After shooting Crawford, Lewis fled to an apartment in a nearby complex, where his friend Angelica Villegas resided with her parents. Villegas was not home at the time and did not give permission for Lewis to enter her parents' home. Villegas's stepfather, Ramon Lozano, discovered Lewis half-naked in the shower. When he asked Lewis what he was doing inside of his house, Lewis told him to be quiet. Lozano tried to call 911 and Lewis attempted to grab his phone. Lozano pushed Lewis out of his house. Lewis appeared "not totally normal, like a person that is drugged." Lozano found Lewis's wet underwear and white tank top in his trashcan, which he turned over to police.

Later that evening, Lewis called Villegas and told her there was "something" in her parents' refrigerator. Villegas went to her parents' apartment and found a gun inside of the refrigerator. She later found Lewis's sweater and a bag of bullets in the living room. The gun and ammunition were subsequently turned over to the police.

Two weeks after the murder, Lewis turned himself in to the police. Crawford died at the hospital from his gunshot wounds. Crawford suffered two bullet wounds to his torso. One of the bullets went through his lung and his aortic artery. The other bullet, which was fired when the muzzle of the gun was pressed against Crawford's skin, was lodged in his spine. Crawford's toxicology report showed that his blood alcohol content was .14 and he had 27 nanograms per milliliter of PCP in his system.

*Defense*

Howard testified that she was in a romantic relationship with Lewis at the time of the shooting. She and Lewis had a child together.

On the day of the shooting, Lewis showed up at her apartment. It had been a day or two since Howard had seen Lewis. Howard believed Lewis was intoxicated on "something else" besides alcohol because his behavior was "a little different." However, Lewis could find Howard's apartment, knew who she was, and was able to sustain a conversation with her.

Later that day, Howard saw Lewis sitting on a cinderblock retaining wall outside her apartment complex. Lewis was with Crawford and three or four other young men. Howard talked to Lewis while he was on the cinderblock retaining wall, but she left to buy beer at a store. When Howard returned from the store, Lewis still was sitting on the retaining wall. She gave Lewis a beer and went to her apartment. At that point, it appeared that the men were socializing.

Howard later saw Lewis hanging out with a group of his friends in the apartment parking lot. They were drinking beer and passing around a few cigarettes. Howard could smell PCP and became angry with Lewis.

Howard approached Lewis, and they had a heated conversation. Lewis did not appear to be in his "right mind." He was slurring his words, which were "mushing together." Howard believed Lewis was under the influence of PCP.

Howard walked back to the apartment, and Lewis followed. Some of the men called out Lewis's nickname (Maceo) in anger. Lewis walked up the stairs slowly; he appeared sluggish.

After they were inside the apartment, Crawford knocked very loudly on the front door. As Howard opened the door, Crawford said, "Where the F is Maceo?" Crawford's demeanor was aggressive, nasty, and very rude. However, there was no physical altercation, and Crawford did not threaten Howard. Howard told Crawford to leave, and he did.

Lewis stayed in the apartment for less than 20 minutes before leaving again. Before he left, Howard and Lewis got into an argument about Lewis's friends, like Crawford, coming to Howard's apartment. There was "a lot of

language" and Howard yelled at Lewis. They were aggressive toward each other. Lewis appeared to be upset with Crawford, saying, "I don't like the fact that he [Crawford] keeps knocking on my fucking door[.]" After making this comment, Lewis left Howard's apartment. He was "still sort of stumbling" but "clearly able to move and function." Howard followed about five minutes later. She dropped her baby off with a neighbor downstairs and headed to where Lewis was standing.

Three men, including Crawford, were standing with Lewis. Lewis was holding a gun and yelling at the men to "get up out of here." Howard tried to pull his arm and stop him, but Lewis pushed her away. At some point, Lewis fired a warning shot up into the air. The other two men ran, but Crawford stayed. Crawford walked up to Lewis aggressively, and they got into a "struggle" while Howard yelled for them to stop. Crawford and Lewis were throwing punches. During the struggle, Lewis fired a second shot, which appeared to hit Crawford in his stomach.

Howard ran to her apartment. She heard, but did not see, the final gunshot. After the incident, Howard feared for her life, from Lewis and others who might want to retaliate.

In an interview with the police, Howard did not mention a physical altercation between Lewis and Crawford. She shook her head when police asked her if Crawford was "chipping back and forth" at Lewis.

The defense called two experts witnesses at trial. The first, a neuropsychologist, concluded that Lewis had low cognitive functioning because of a brain injury suffered as a young child. The second, a medical doctor who specializes in pain and addiction, testified that (1) PCP is a dissociative anesthetic that creates a separation of awareness between one's body and surroundings; and (2) symptoms of confusion and agitation can be magnified if the person has a brain injury or simultaneously abuses other substances.

Doc. No. 12-7 at 3–7.

On October 19, 2016, a San Diego County jury convicted Petitioner of first-degree murder, in violation of California Penal Code section 187(a), and found true the allegation that he discharged a firearm, in violation of California Penal Code section 12022.53(d). *See* Doc. No. 12-1 at 1. On November 17, 2016, the trial judge sentenced Petitioner to a state prison term of fifty years to life as follows: (1) indeterminate term of

twenty-five years to life for the underlying count of murder; and (2) indeterminate term of twenty-five years to life for the firearm enhancement, to run consecutively.  *See id.*

On July 11, 2017, Petitioner appealed his sentence to the California Court of Appeal, raising the following claim: "The trial court erred by instructing the jury—contrary to the plain language of the Penal Code—that it could not consider evidence of voluntary intoxication in connection with express malice and imperfect self-defense." Doc. No. 12-1 at 13.  On December 15, 2017, Petitioner filed a Supplemental Brief in the California Court of Appeal arguing that "[t]he enactment of Senate Bill 620 require[d] remand so that the trial court may exercise its discretion whether to strike the firearm enhancement."  Doc. No. 12-5 at 2.  On March 16, 2018, the state appellate court rejected the instructional error claim, but remanded the matter to the trial court to consider whether Petitioner's firearm enhancement should be stricken in light of then-recent amendments to California's gun use enhancements under section 12022.53(h).  *See* Doc. No. 12-7.

On April 16, 2018, Petitioner filed a petition for review in the California Supreme Court raising his instructional error claim.  *See* Doc. No. 12-8.  The California Supreme Court denied the petition without comment on June 13, 2018.  *See* Doc. No. 12-9.

On July 25, 2018, pursuant to the appellate court's order for remand, the trial court held a resentencing hearing and declined to strike the firearm enhancement.  *See* Doc. No. 12-10 at 1–2.  Petitioner did not appeal from the July 25, 2018 resentencing.

**B.**   **Petitioner's Habeas Petitions**

*1.*   *State Habeas Petitions*

On May 7, 2019, Petitioner constructively filed a petition for writ of habeas corpus in the San Diego County Superior Court ("First State Petition"), arguing ineffective assistance of counsel and the instructional error claim he raised on direct appeal.  *See* Doc. No. 12-11.  The Superior Court denied the First State Petition on August 9, 2019. *See* Doc. No. 12-12.

On August 23, 2019, Petitioner constructively filed a second habeas petition in the

California Court of Appeal ("Second State Petition"), raising the same two claims he raised in his First State Petition. *See* Doc. Nos. 12-12, 12-13. The state appellate court denied Petitioner's Second State Petition on September 10, 2019. *See* Doc. No. 12-14. Petitioner did not file a habeas petition in the California Supreme Court.

### 2. *Federal Habeas Petition*

Petitioner constructively filed a federal habeas petition on May 28, 2020, which was docketed on June 25, 2020 (the "Original Petition"). *See* Doc. No. 3 at 23–24. On August 25, 2020, Respondent filed a motion to dismiss, arguing that the Original Petition was untimely and contained unexhausted claims. *See* Doc. No. 11. On October 26, 2020, Petitioner constructively filed the Amended Petition, which was docketed on November 5, 2020. *See* Doc. No. 17.

In the only claim in the Amended Petition, Petitioner asserts that the trial court committed prejudicial error by instructing the jury that it could not consider evidence of voluntary intoxication in connection with express malice or imperfect self-defense. *See id.* at 6–9, 13; *see also id.* at 24 (stating that he "has removed all unexhausted claim[s] in the instant [A]mended Petition").

On December 3, 2020, Petitioner moved the Court for leave to file supplemental pleadings, seeking to "amend his habeas Petition." Doc. No. 20 at 1. The Court construed Petitioner's request as a motion to file the Amended Petition and denied the motion as moot because the Amended Petition had already been filed on the docket. Doc. No. 21. The Court further denied as moot Respondent's motion to dismiss the Original Petition and ordered Respondent to respond to the Amended Petition. *Id.*

On January 6, 2021, Respondent filed a motion to dismiss the Amended Petition, arguing that the Amended Petition was untimely. Doc. No. 23. On May 17, 2021, Judge Berg issued a Report and Recommendation, Doc. No. 28, which the Court adopted in its entirety, Doc. No. 29. The Court found that statutory tolling did not render Petitioner's Amended Petition timely, and further development of the record was required to determine whether Petitioner was entitled to equitable tolling. *See* Doc. No. 28 at 7–19.

The Court also found that because Respondent argued for the first time in reply that the Court should address the merits of Petitioner's instructional error claim, Petitioner did not have an opportunity to address Respondent's arguments on the merits. *See id.* at 19–20. Accordingly, the Court denied Respondent's motion to dismiss. *See* Doc. No. 29.

Pursuant to the Court's scheduling order, *see* Doc. No. 30, Respondent filed an Answer on July 15, 2021, *see* Doc. No. 38.

Judge Berg now recommends that the Court deny the Amended Petition. *See* Doc. No. 41 at 24. After Judge Berg issued his R&R on the Amended Petition, Petitioner filed a motion for leave to file a further amended petition. *See* Doc. No. 45.

### III. MOTION FOR LEAVE TO AMEND

On June 1, 2022, Petitioner filed a proposed further amended petition. Doc. No. 45 (the "Proposed Amended Petition"). The Proposed Amended Petition is not accompanied by a motion for leave to file such a further petition. Instead, it was filed as a new petition, initiating a new action. *See* Case. No. 22-cv-742-LL (AGS) at Doc. No. 1. Judge Lopez then directed the Clerk of Court to file the petition on the docket of this case, as the Court had not yet completed its adjudication of the Amended Petition, which involves the same underlying state court conviction. *See id.* at Doc. No. 2 (citing *Woods v. Carey*, 525 F.3d 886, 890 (9th Cir. 2008)).

A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Pursuant to Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The policy of allowing amendments 'is to be applied with extreme liberality.'" *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008) (citation omitted). Courts generally consider five factors: "'bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings.'" *Id.* (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin*, 59 F.3d at 845; *see also Caswell v. Calderon*, 363 F.3d 832, 837–38 (9th Cir. 2004)

(denying leave to add unexhausted, meritless claim); *Wyatt v. McDonald*, 2011 U.S. Dist. LEXIS 140533, 2011 WL 6100611, at *7 (E.D. Cal. Dec. 7, 2011) (denying motion to amend petition to add time-barred claims as futile).

As an initial matter, Petitioner's request is woefully untimely. Petitioner initiated this habeas action in June 2020. *See* Doc. Nos. 1, 3 (the "Initial Petition"). Petitioner filed his Amended Petition in October 2021. *See* Doc. No. 17. Petitioner did not seek or obtain a stay pursuant to either *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003) or *Rhines v. Weber*, 544 U.S. 269 (2005). So the case proceeded on the Amended Petition. The Amended Petition drew a full round of motion practice: Respondent moved to dismiss the Amended Petition, *see* Doc. No. 23, Petitioner opposed, *see* Doc. No. 32, Respondent replied, *see* Doc. No. 26, Judge Berg issued a Report and Recommendation, *see* Doc. No. 28, and the Court issued a decision on the motion, ruling in Petitioner's favor, *see* Doc. No. 29. Respondent then responded to the Amended Petition by filing an Answer in July 2021. *See* Doc. No. 38. Between July 2021 and March 2022, Respondent lodged additional state court records, *see* Doc. No. 40, merits briefing on the Amended Petition closed, and Judge Berg took the matter under submission and issued an R&R. Then, at Petitioner's request, the Court then extended the time for Petitioner to object to Judge Berg's R&R. *See* Doc. Nos. 42, 44. On May 11, 2022—nearly two years after this action began, some nine months after his traverse was due, and nearly two months after Judge Berg issued the R&R on the Amended Petition—Petitioner filed the Proposed Amended Petition. *See* Doc. No. 45. Consequently, Petitioner's undue delay weighs heavily against allowing amendment at this stage of the proceeding.

Also relevant is the timeliness of the Original Petition and the relation back doctrine. On July 25, 2018, the trial court resentenced Petitioner after remand, and Petitioner did not appeal. Thus, Petitioner's conviction became final on September 23, 2018—sixty days after he was resentenced—for purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104- 132, 110 Stat. 1214. Accordingly, the statute of limitations for the filing of Petitioner's habeas petition in

federal court began to run on September 24, 2018, the day after the judgment became final. *See* 28 U.S.C. § 2241(d)(1)(A); *see also Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (citing *Patterson v. Stewart*, 251 F.3d 1243, 1245–46 (9th Cir. 2001)) (noting that the one-year statute of limitation under AEDPA begins to run the day after the conviction becomes final), *superseded by statute on other grounds*. Thus, without the benefit of any tolling, Petitioner's presumptive federal habeas deadline was September 24, 2019.

Plaintiff filed his Original Petition on May 28, 2020—some eight months after the presumptive AEDPA deadline. The Court has already determined that statutory tolling does not render the Original Petition timely, and that further development of the record is necessary to determine whether Petitioner is entitled to equitable tolling. *See* Doc. No. 28 at 8–19; Doc. No. 29. Nonetheless, assuming Petitioner is entitled to equitable tolling, thus making his Original Petition timely, Petitioner's Proposed Amended Petition must still relate back to the Original.

Pursuant to Rule 15(c)(1)(B), an amendment relates back to the initial pleading if the claims in the original and the amendment "ar[i]se out of the conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(B). The rule must be read in the context of Rule 2(c)'s requirement that habeas petitioners plead their claims with particularity, and with AEDPA's tight time limit, so as to permit only claims of the same "time and type" as the claims in the original petition to relate back only to timely claims in the original petition. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the Supreme Court rejected the Ninth Circuit's broad interpretation of relation back "so long as the new claim stemmed from the petitioner's trial, conviction, or sentence." 545 U.S. at 656–57. Instead, the Supreme Court held that relation back depends on the "existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. A habeas claim does not share a core of operative fact when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id* at 649. Therefore, the Court looks to the Proposed Amended Petition and assesses whether

the facts in support are attempted or actually set forth in the Original Petition.  *See Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020) (en banc) (noting a two-step process to assess relation back in a habeas proceeding: determine what claims are presented in the amended petition and what core facts underly those claims, then for each claim in the amended petition look to the body of the original petition and its exhibits to see whether it "set out" or "attempted to set out" a corresponding factual episode).

## A.    The Proposed Amended Petition

The Proposed Amended Petition asserts only one ground for habeas relief.  *See* Doc. No. 45 at 4 (leaving the space for "Ground 2," or other additional grounds, blank). On page three of the form, Petitioner does not state his first and only ground for relief. Instead, he filled in "refer to Attach" in the space provided for the brief statement of Ground 1, supporting facts, supporting documents, and supporting cases, rules, or other authority.  *See* Doc. No. 45 at 3.  The attachment provides, in full:

**Petitioner's Right to A Fair Appeals Process was Severely Tarnished When His Appellant Attorney Did Not Appeal the Trial Court's Decision. Smith v. Robbins, 528 U.S. 259 (2000)**

On December 15, 2017, Petitioner filed a Supplemental Brief in the California Court of Appeals, arguing that "[t]he enactment of Senate Bill 620 require[d] remand so that the trial court may exercise its discretion whether to strike the firearm enhancement." (Lodgement 5 at 2.) On March 16, 2018, the State Appellate Court rejected the instructional error claim, but remanded the matter to the Trial Court to consider whether the petitioner's firearm enhancement should be striken in light of then-recent amendments to California's gune use enhancements under section 12022.53(h). (Lodgement 7.) Refer to Exhibit A.

On April 16, 2018, Petitioner filed a Petition for review in the California Supreme Court, raising his instructional error claim. (Lodgement 8.) The California Supreme Court denied the petition without comment on June 13, 2018. (Lodgement 9.)

On July 25, 2018, pursuant to the Appellate[] Court's order for remand, the Trial Court held a resentencing hearing and declined to strike the firearm enhancement. (Lodgement 10, at 1-2.) His Appellant Attorney did not appeal

the July 25, 2018 sentence and judgement. The Appellant claims and argues that since the Appellant Court recognized the excessiveness of the firearm enhancement, his attorney should have filed a reply to that court decision.

Doc. No. 45 at 8.

Additionally, Petitioner attaches page 6 from Judge Berg's R&R; Petitioner has crossed out the word "Petitioner" from the sentence "Petitioner did not appeal the July 25, 2018 sentence and judgment . . ." and appears to annotate instead "His Appellate Attorney." *Id.* at 9. Directly underneath this annotation, Petitioner again asserts "[t]hat since the Appeal recognized the excessiveness of the Firearm enhancement that his attorney should have filed a reply to the . . . decision." *Id.*

Thus, it is clear from the Proposed Amended Petition's habeas form and its attachments, *see Ross v. Williams*, 950 F.3d 1160, 1168 (9th Cir. 2020), that Petitioner seeks to bring an ineffective assistance of counsel claim based upon his counsel's failure to appeal his July 25, 2018 resentencing in connection with the firearm enhancement. The following are the "core facts" relevant to this claim.

On October 19, 2016, Petitioner was convicted of first-degree murder, a crime punishable by imprisonment in state prison for life. *See* Doc. No. 12-7 at 18 (citing Cal. Penal Code § 187, subd. (a), 190, subd. (a)). At the time, section 12022.53(d) of the California Penal Code provided, generally speaking, that certain crimes, including those punishable by life in prison, were subject to an additional penalty of 25 years to life in prison if the crime involved the discharge of a firearm. *Id.* at 19. Because Petitioner was convicted of first-degree murder and the jury found that he "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury, . . . or death, to any person other than an accomplice" in the commission of the crime, he was sentenced to 50 years to life in prison based upon the combination of the first-degree murder charge (25 years to life) and mandatory gun enhancement (25 years to life).

Senate Bill 620 became effective on January 1, 2018—during Petitioner's direct appeal. Cal. Stats. 2017, ch. 682, eff. Jan. 1, 2018. Senate Bill 620 made the gun

enhancement, described above, discretionary.  Based upon the new legislation, the Court of Appeals granted Petitioner leave to file a supplemental brief regarding the impact of the bill on his conviction and sentence.  Doc. No. 12-7 at 19.  Ultimately, the Court of Appeals agreed that Senate Bill 620 was to be applied retroactively pursuant to *People v. Francis*, 71 Cal. 2d 66 (1969), and thus "remand[ed] this matter to the superior court to consider whether Lewis's firearm enhancement should be stricken under amended section 12022.53, subdivision (h)." *Id.* at 19–21.  Pursuant to the appellate court's order for remand, the trial court set his case for resentencing.

On July 25, 2018, Petitioner was resentenced.  *See* No. 12-10 at 1–2.  The trial court exercised its discretion and did not strike Petitioner's firearm enhancement.  Accordingly, Petitioner's sentence did not change.  Petitioner did not appeal from the resentencing.  It is not clear from the Proposed Amended Petition why—*i.e.*, if he made the decision on advice of counsel, if Petitioner asked his attorney to file an appeal and she did not, or if there was no consultation at all.  It is this failure to appeal that Petitioner challenges by way of his Proposed Amended Petition's ineffective assistance of counsel claim.

**B.    The Original Petition**

The Court next looks to the Original Petition.  In the Original Petition, Petitioner asserted two grounds for relief: (1) "Cal. Rules of the Court, rule 8.304(b)(4)(B)"; and (2) Ineffective Assistance of Trial Counsel.  Doc. No. 3 at 6–7.  As to the former, Petitioner elaborated that "The certificate of probable cause requirement does not apply to claims that arose after entry of the plea and do not affect the pleas validity. Petitioner believes seeking Senate Bill 620 application, under the rules of the court 8.304(b)(4)(B), such application will neither be frivolous nor vexatious." Doc. No. 3 at 6.  With respect to the latter, Petitioner cites to his attached documents, specifically "(A) (Page 2–11)." *Id.* at 7.

Petitioner attached two exhibits to the Original Petition.  Exhibit A is a document entitled "Senate Bill 620 Gun Enhancement" and the "Argument" is that "[t]he enactment

of Senate Bill 620 requires remand[] so the Court[] may exercise its discretion whether to strike the firearm enhancement." *Id.* at 15.

Exhibit B, although filed in support of the Original Petition, bears the markings that it was filed with the Superior Court and initially written in connection with one of his State Habeas Petitions. *See* Doc. No. 3 at 19 (identifying the court as the "Superior Court of the State of California County of San Diego" and "Superior Court Case No: SCE353803" and "No. D071434"); *see also id.* at 23 (praying for a writ of habeas corpus and dated May 28, 2020). In this document, Petitioner contends that the trial court erred in its jury instructions regarding voluntary intoxication,[1] *see id.* at 19, 21, and that his trial counsel was ineffective, *id.* at 22. Regarding the ineffective assistance of counsel claim, Petitioner asserted:

Second Claim: Ineffective Assistance of Trial Counsel

After almost one year, investigative research an[d] information gathering for a comprehensive defense[,] Trial Counsel found that Petitioner ha[d] an extensive history of "alcohol and drug" abuse, (addiction) PCP a "hallucinogenic" intoxication. See exhibit A of C11/FBI Probation report: (1 CT 166-171). Petition and victim were both drinking alcohol and smoking PCP on the same day of the tragic murder. Furthermore, Petitioner suffers from mental illness from a tra[u]ma[]tic injury at an early age. See exhibit B (9 RT 896-931.) and (10RT 1007-1009.) These two cumulative factors,

---

[1] As noted, Exhibit B to the Original Petition puts forth a jury instructions error argument, which ultimately became the sole claim for relief in the Amended Petition. However, this supporting document did not render the Original Petition mixed. It is clear that this argument, couched in a pre-written document, was not actually raised, or even referenced, in the Original Petition as a ground for relief. And because the document was from one of Petitioner's State Habeas Petitions and raises the ineffective assistance of counsel argument Petitioner asserted as ground two in the Original Petition, it appears that it was only attached as evidence of Petitioner's exhaustive efforts with respect to his Original Petition's ineffective assistance of counsel claim.

Further, the *facts* supporting this jury instructions argument are not contained anywhere in the Original Petition or its attachments. Nonetheless, the facts relevant to this argument, which the Court finds elsewhere, *see* Doc. No. 17, are that Petitioner presented evidence, described above *supra* Part I.A, of voluntary intoxication and that the jury was improperly instructed that it could not consider such evidence on the issues of express malice and his imperfect self-defense. *See id.* at 21. These facts do not help the Proposed Amended Petition relate back to the Original Petition.

mental illness and voluntary intoxication of PCP and alcohol formed the obvious defense of express malice and imperfect self-defense . . . But in the Motion [in] Limine: see exhibit C (1 CT 34-35) Prosecution won the argument that "only if Petitioner testifies" the information/evidence of his state of mind at the time of the shooting – or the victim[']s drug history cannot be introduced. After Petitioner's Counselor realized the ramifications of the Motion [in] Limine _ "Knowing the only way to introduce evidence into the trial for the best outcome for Petitioner; she (The Petitioner's Counsel) chose not to[] allow Petitioner to do what was right an necessary for an advantageous outcome in the Verdict. Petitioner[']s U.S. Const 6th Amend Right to have affective counsel was denied: See Strickland v. Washington, 466 US 668, 104 S. Ct. 2052 (1884).

*Id.* at 22.

Accordingly, Petitioner's Original Petition challenged the mandatory imposition of the gun enhancement and sought resentencing pursuant to Senate Bill 620, as well as his trial counsel's representation with respect to the decision for Petitioner to testify at trial, potentially a motion in limine, and, generally speaking, the imperfect self-defense.

## C. Relation Back Analysis

The mere fact that there was an ineffective assistance of counsel claim in an initial petition does not automatically relate another, different ineffective assistance of counsel claim back. *See Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012) (holding an original claim of ineffective assistance for failure to present a particular defense did not preserve relation back of any future claim of ineffective assistance for failure to present a different defense); *Nguyen*, 736 F.3d at 1297; *Ross*, 950 F.3d at 1168; *United States v. Crawford*, No. 1:02-CV-06498 OWW, 2009 U.S. Dist. LEXIS 134007, at *10–11 (E.D. Cal. Feb. 22, 2009) (noting other Circuits have held subsequent factual claims of ineffective assistance of counsel do not automatically relate back to the original claim of ineffective assistance of counsel); *Coleman v. Allison*, 223 F. Supp. 3d 1035, 1053 (C.D. Cal. 2015) (stating a contention that new claims of ineffective assistance automatically related back to prior ineffective assistance "flies in the face of case authority"). Instead, the two claims must share a core of operative facts.

As discussed above, Petitioner's original ineffective assistance of counsel claim challenged his trial court counsel's failures with regard to, generally speaking, putting forth an imperfect self-defense.  His ineffective assistance of counsel claim in the Proposed Amended Petition on the other hand relates to his attorney's alleged failure to, or interference with Petitioner's right to, appeal from the resentencing.  The resentencing was *not* in any part related to any alleged failures concerning the imperfect self-defense.  To be sure, that piece of his appeal was affirmed by the state appellate court.  Instead, the resentencing was related to Senate Bill 620 and the trial court's discretion to impose California's gun enhancement law.  Thus, the ineffective assistance of counsel claim in the Original Petition differs from the claim in the Proposed Amended Petition in both the time and type and thus the latter does not relate back to the former for Rule 15 purposes.

Senate Bill 620 is referenced in the Original Petition.  Not with respect to his ineffective assistance of counsel claim, but in his first ground for relief.  *See* Doc. No. 3 at 6.  To reiterate, ground one was "Cal. Rules of the Court, Rule 8.304(b)(4)(B)."  *Id.*  In full, Petitioner asserted: "The certificate of probable cause requirement does not apply to claims that arose after entry of the plea and do not affect the pleas validity. Petitioner believes seeking Senate Bill 620 application, under the rules of the court 8.304(b)(4)(B), such application will neither be frivolous nor vexatious."[2]  *Id.*

Although both claims generally relate to the gun enhancement and Senate Bill 620, the claims do not share the same core of operative facts.  The claim in the Original Petition arose from the original sentencing on November 17, 2016.  Whereas in the Proposed Amended Petition, his ground for relief arises from the failure to appeal from

---

[2] In 2020, when Petitioner filed the Original Petition, California Rules of Court, Rule 8.304(b)(4)(B) stated that for an "Appeal after plea of guilty or nolo contendere or after admission of probation violation," the defendant need not comply with the requirement that the defendant file a "statement required by Penal Code section 1237.5 for issuance of a certificate of probable cause" "if the notice of appeal states that the appeal is based on" "[g]rounds that arose after entry of the plea and do not affect the plea's validity."  Cal Rules of Court, Rule 8.304(b)(4)B) (2020).  However, Petitioner did not enter a plea in the underlying state court case—he was convicted by a jury.

the July 25, 2018 resentencing.  Thus, the claims relate to two entirely separate proceedings separated by nearly two years.  Moreover, the claim in the Original Petition challenged the *mandatory* imposition of the gun enhancement.  By way of an ineffective assistance of counsel claim in the Proposed Amended Petition, Petitioner is at best challenging the trial court's *discretionary* imposition of the enhancement.

Further, in order to prevail on his Proposed Amended Petition, Petitioner would need to set forth facts explaining how his counsel was ineffective following the resentencing, for example, whether he asked his counsel to appeal and she did not, whether counsel did not consult him at all, or whether she should have known he wanted to appeal.  Moreover, Petitioner would need to demonstrate that such a failure was prejudicial.  These facts exist far beyond the scope of the Original Petition, which focuses entirely on the trial and sentencing.  As such, the Proposed Amended Petition contains an entirely new claim for relief, supported by facts that differ from those in the Original Petition in both time and type.  Therefore, the ineffective assistance of counsel claim in the Proposed Amended Petition does not relate back to the Original Petition on this basis as well.

In sum, Petitioner's ineffective assistance of counsel claim in the Proposed Amended Petition does not share a common core of operative facts with the Original Petition.  Accordingly, the Proposed Amended Petition does not relate back to the Original Petition, and thus, even assuming the Original Petition is timely, amendment would be futile.  Based upon the untimeliness of this proposed amendment, and its futility, the Court **DENIES** leave to amend.

\* \* \*

## IV. PETITION FOR WRIT OF HABEAS CORPUS

**A.     Legal Standards**

*1.     Review of Habeas Petitions*

Title 28 of the United States Code, § 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a).

The Amended Petition was filed after April 24, 1996, and therefore it is subject to AEDPA's time constraints.  Pursuant to 28 U.S.C.A. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from

[Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal rule [from Supreme Court decisions] . . . but unreasonably applies [that rule] to the facts of the particular state prisoner's case." *White v. Woodall*, 572 U.S. 415, 425 (2014) (quoting *Williams*, 529 U.S. at 407–08).  In deciding a state prisoner's habeas petition, a reviewing federal court need not decide whether the state court applied clearly established federal law erroneously or incorrectly; rather a federal court applies an extraordinarily deferential review, inquiring only whether the state court's decision was "objectively unreasonable."  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.

When a state supreme court does not provide any explanation for its decision, the reviewing federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991) (providing that a reviewing federal court may look through to the last reasoned state court decision). Where a state court summarily denied a claim, a presumption exists that the state court adjudicated the claim on the merits, unless "there is reason to think some other explanation for the state court's decision is more likely." *Harrington v. Richter*, 562 U.S. 86, 99–100 (2011).  If the state court provided no explanation for its decision, a reviewing federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.

Habeas relief is also available where the state court's adjudication of a claim

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C.A. § 2254(d)(2); *see also Wood v. Allen*, 558 U.S. 290, 293 (2010). Federal habeas courts give deference to a state court's application of state law and interpretation of the facts. *See Estelle v. Maguire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780–81 (1990). A reviewing federal court will not overturn a state court's decision on factual grounds unless the federal court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. *See Miller-El*, 537 U.S. at 340; *see also Rice v. Collins*, 546 U.S. 333, 341–42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable).

   2.    *Report & Recommendation Review*

The duties of the district court in connection with a magistrate judge's Report and Recommendation are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1). Where the parties object to an R&R, "[a] judge of the [district] court shall make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (providing that the district court must make a de novo determination of any part of the magistrate judge's disposition that a party has properly objected to). A district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989) (quoting 28 U.S.C. § 636(b)).

**B.    Discussion**

As noted above, on June 9, 2022, Petitioner filed a document entitled "Supplement to Motion to Alter or Amend Judgment." Doc. No. 46. According to this filing, Petitioner "moves the court pursuant to Fed. R. Civ. P. 59(e) to alter or amend the judgement [*sic*] entered in this case on 03/22/22, in order to correct manifest errors of law

and fact." *Id.* at 1.  Based upon Petitioner's reference to March 22, 2022—the date Judge Berg issued his R&R—the Court treats this filing as an objection to the R&R.

Even liberally construing this filing, Petitioner does not identify any error in the R&R.  In fact, but for the reference to the date Judge Berg issued the R&R, the filing is devoid of any mention of the R&R.  Petitioner does not identify any facts or law in the R&R, nonetheless explain how such a factual or legal finding is erroneous.  Instead, after citing to a litany of cases discussing the Court's authority to amend a judgment pursuant to Rule 59(e), Petitioner argues:

> In Pague v. Berryhill, the court and a[n] Administrative law judge applied the five step sequential evaluation process to determine if the petitioner in the above case was prejudiced by fact that trial court's district attorney not being able to prove beyond a reasonable doubt that the petitioner did not suffer from impaired judgement, even though the petitioner did suffer from bipolar disorder, mood disorder and P[T]S[D]. In comparison, petitioner Lewis argues that the prosecutor in his case faced an insurmountable challenge when faced with the task of proving beyond a reasonable doubt that he did not suffer from impaired judgement after several witnesses provided statements or gave testimony that Mr. Lewis "was not totally" normal wen encountered Ms. Howard, half naked in his shower; or when Mr. Lewis' fiancé stated that Mr. Lewis was intoxicated on "something else" besides alcohol because his behavior was a "little different." (See Exhibit.) The same witness provided testimony that she could smell "pcp" on Mr. Lewis.
>
> Also, the defense called experts.
>
> The defense called two expert witnesses at trial. The first, a neuropsychologist, concluded that Lewis had low cognitive functioning because of brain injury suffered as a young child. The second, a medical doctor who specializes in pain and addiction, testified that (1) pcp is a dissociative anesthetic that creates a separation of awareness between one's body and surroundings; and (2) symptoms of confusion and agitation can be magnified if the person has a brain injury or simultaneously abuses other substances.

Doc. No. 46 at 2–3.  Petitioner then concludes with the legal standard for obtaining a writ of habeas corpus.  *Id.* at 3.

The case of *Pague v. Berryhill*, No. 5:16-cv-00590-GJS, 2017 U.S. Dist. LEXIS 32443 (C.D. Cal. Mar. 7, 2017), is inapposite. *Pague* involved an appeal from a denial of social security benefits. *Id.* at *1.

Petitioner's discussion of testimonial evidence at trial regarding his impairment is in the R&R exactly as he argues in the objection. *See* Doc. No. 41 at 3 (quoting the Court of Appeal's decision, which stated that testimony revealed that Petitioner appeared "not totally normal," was found "half-naked in the shower," and "intoxicated on something else," and that Petitioner's behavior was "a little different"). Further, the paragraph of the objection wherein Petitioner describes his expert witnesses at trial appears to have been copied verbatim from the R&R. *See id.* As such, Petitioner does not argue, and the Court does not find, any factual inaccuracy in the R&R.[3]

And importantly, Petitioner's argument "that the prosecutor in his cased faced an insurmountable challenge when faced with the task of proving beyond a reasonable doubt that he did not suffer from impaired judgement" is well beyond the scope of this habeas action and Judge Berg's R&R. The Amended Petition asserts one ground for relief: jury instructions error with respect to voluntary intoxication. The objection is silent on this issue. To the extent Petitioner challenges the sufficiency of the evidence in support of his conviction, that is not a proper basis to object to Judge Berg's R&R. Instead, having reviewed the R&R, the Court finds that it is thorough, accurate, and well-reasoned. Therefore, the Court **OVERRULES** Petitioner's objection, **ADOPTS** the R&R in its entirety, and **DENIES** the Amended Petition.

---

[3] To the extent Petitioner objects to the statement of fact in the R&R—"Petitioner did not appeal the July 25, 2018 sentence and judgment"—by way of the attachment to his Proposed Amended Petition, *see* Doc. No. 45 at 9 (incorporating page 6 of the R&R), the Court **OVERRULES** the objection. It is undisputed that Petitioner did not appeal from the resentencing, and that Petitioner takes issue with his counsel's failure to appeal does not change this fact.

## V. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 foll. 28 U.S.C. § 2254.  A petitioner may not seek an appeal of a claim arising out of a state court detention unless the petitioner first obtains a certificate of appealability from a district judge or circuit judge under 28 U.S.C. § 2253.  Fed. R. App. Proc. 22(b).  Pursuant to 28 U.S.C. § 2253(c), a certificate of appealability will issue only if the petitioner makes a substantial showing of the denial of a constitutional right.

For the reasons set forth in detail in this Order and Judge Berg's R&R, Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability should not issue in this action.

## VI. CONCLUSION

Based upon the foregoing, the Court **DENIES** Petitioner's motion for leave to file his further amended petition.  The Court **OVERRULES** Petitioner's objection to the R&R, **ADOPTS** the R&R in its entirety, **DENIES** Petitioner's Amended Petition for writ of habeas corpus, and **DECLINES** to issue a certificate of appealability.  The Court further **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated:  August 10, 2022

HON. MICHAEL M. ANELLO
United States District Judge